UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARTWELL THERAPEUTICS LICENSING LLC, | : : : : |
| Plaintiff, | : Civil Action No. 19-1366 |
| vs. | : : **COMPLAINT** |
| HARRIS PHARMACEUTICAL, INC., | : |
| Defendant. | : : : |

Plaintiff Chartwell Therapeutics Licensing LLC ("Chartwell" or "Plaintiff"), by and through its attorneys, Hahn & Hessen LLP, brings this Complaint against Defendant Harris Pharmaceutical, Inc. ("Harris" or "Defendant"), and in support thereof alleges as follows:

## THE PARTIES

1. Chartwell is a New York limited liability company that maintains a principal place of business and operates a pharmaceutical manufacturing facility at 77 Brenner Drive, Congers, New York 10920. Chartwell's sole member, Jack Goldenberg, is a natural person and a citizen of the State of New York.

2. Upon information and belief, Harris is a Florida corporation with a principal place of business at 9090 Park Royal Drive, Fort Meyers, Florida 33908.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Chartwell and Harris are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

4.  This Court has personal jurisdiction over Harris because Harris is licensed to conduct, and regularly transacts, business in the State of New York. Moreover, this action arises out of Harris' various agreements with Chartwell, a New York entity, that were negotiated and made in New York, and under which Harris agreed to purchase and market products from Chartwell that Chartwell manufactured in New York. This Court has personal jurisdiction over Harris on these bases as well.

5.  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)-(3) and 1391(c)(2).

## BACKGROUND

6.  On or about June 20, 2014, Chartwell and Harris executed a written Supply and Distribution Agreement (the "Agreement") whereby Chartwell agreed to sell Harris, and Harris agreed to market and sell to third-party customers, certain capsules and tablets of the antibiotic Doxycycline Hyclate (the "Products"). Chartwell manufactured the Products at its facility in Rockland County, New York.

7.  The Agreement, among other things, provides that Chartwell shall provide the Products to Harris on consignment, and that Harris, after receiving payment from a customer on a particular order for the Products, shall reimburse Chartwell for the cost of the Products – *i.e.*, the cost of goods sold, or "COG" – at the rate specified in the Agreement.

8.  The Agreement provides that, in addition to paying Chartwell the COG, Harris shall pay Chartwell a split of the profits on its sales of the Products (the "Profit Split"). Under the Agreement, Profit Split is equal to the total sales price of any third-party order for the Products minus (a) the COG, (b) any sales rebates and adjustments Harris extended to its customer (the "SRAs"), (c) Harris' logistical expenses, (d) a 10 to 15 percent

2

marketing fee to Harris, depending upon the distribution channel, and (e) any up-front payments Harris made to Chartwell on the Products. Harris has an obligation to properly calculate and account to Chartwell for its SRAs, the Profit Split, and the COG.

9. The Agreement obligates Harris to report and account for the Profit Split to Chartwell every month. The Agreement likewise provides that Harris shall pay Chartwell the COG and its portion of the Profit Split within the month after Harris receives payment on the Products from its third-party customers.

10. At Harris' request in the spring of 2016, Chartwell and Harris agreed to a limited amendment to the Agreement (the "Amendment"), pursuant to which the parties agreed that if Harris, in order to make a sale, needed to sell the Products below the COG, then Harris would be entitled to an 85 percent rebate of the COG (the "Reduced COG"). Harris was not entitled to the Reduced COG with respect to any sale it made above the COG. The Amendment did not alter Harris' obligation to pay the Profit Split to Chartwell or change the formula for calculating the Profit Split.

11. Despite these clear and absolute obligations, and Chartwell's compliance with all of its duties under the Agreement and the Amendment, Harris failed to pay Chartwell (a) the full COG and Reduced COG due and owing under the Agreement and Amendment, respectively, and (b) the full Profit Split due and owing under the Agreement and the Amendment. Indeed, in or about January 2018, Harris admitted that it owed Chartwell more than $3.1 million in Profit Split for the year ending 2017, but has failed to pay any portion of this amount due and owing to Chartwell.

12. Since early 2018, Chartwell has consistently asked Harris to provide Chartwell with a full breakdown and accounting of its Profit Split calculations, its SRAs,

and its COG and Reduced COG payments under the Agreement and Amendment. Despite its obligation to properly calculate and account to Chartwell for these charges, Harris has refused or otherwise failed to provide Chartwell with such an audit and has refused to identify its customers to Chartwell. As Harris is Chartwell's only source of this information, Chartwell is presently unaware of the full scale of Harris' breaches of the Agreement and Amendment. Chartwell accordingly reserves the right to assert any and all claims arising out of such further, as-yet-unknown breaches should discovery reveal any.

13. The Agreement provides for a six-month term with automatic renewals every six months unless either party provides ninety days' written notice of termination. By letter dated August 11, 2017, Chartwell notified Harris that it was terminating the Agreement, and the parties agreed the Agreement would be terminated effective as of January 31, 2018.

14. Notwithstanding the termination of the Agreement, the parties continued to do business together. In or about December 2017, Chartwell and Harris agreed that, if Harris desired to buy additional quantities of the Products from Chartwell after the termination of the Agreement, it would issue purchase orders to Chartwell for each such order (the "Post-Termination Purchase Orders"). The parties further agreed that each Post-Termination Purchase Order would be governed by a new set of payment terms. Under these terms, Harris agreed to pay Chartwell up front for the Products at a lower rate than it paid under the Agreement (the "Post-Termination COG"). Harris further agreed to pay Chartwell a profit split on sales of the Products for each Post-Termination Purchase Order. Harris agreed that this new profit split (the "Adjusted Profit Split") would be equal to the total sales price of any third-party order minus (a) the Post-Termination COG, (b) the SRAs,

4

(c) Harris' logistical expenses, (d) a 25 percent marketing fee to Harris, and (e) any up-front payments Harris made to Chartwell for the Products it sold.

15. Throughout 2018, Harris placed several Post-Termination Purchase Orders with Chartwell.  Chartwell, in turn, supplied Harris with the Products and otherwise fully complied with its obligations to Harris with respect to each order.

16. As it did under the Agreement and Amendment, Chartwell repeatedly asked Harris to provide Chartwell with a full breakdown and accounting of its Adjusted Profit Split calculations under the Post-Termination Purchase Orders.  Harris, however, has failed to provide Chartwell with a full and complete accounting of these figures.  Upon information and belief, Harris has failed to pay Chartwell the full Adjusted Profit Split due and owing under the Post-Termination Purchase Orders.  Moreover, because Chartwell has no other source but Harris for information concerning Harris' third-party sales of the Products under the Post-Termination Purchase Orders and Harris' Adjusted Profit Split calculations, the full scope of Harris' breaches of the Post-Termination Purchase Orders, and Chartwell's damages as a result of them, is presently unknown.  Chartwell accordingly reserves the right to assert any and all claims arising out of such further, as-yet-unknown breaches should discovery reveal any.

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT; AGREEMENT AND AMENDMENT)

17. Chartwell repeats and re-alleges all allegations set forth in paragraphs 1-16 as if fully set forth herein.

18. Chartwell and Harris entered into the Agreement and the Amendment.

19. The Agreement and the Amendment are valid and binding upon Harris.

20. Chartwell fully performed its obligations under the Agreement and the Amendment.

21. Harris failed to properly calculate and account for its SRAs under the Agreement and Amendment.

22. Harris failed to properly calculate, account for, and pay Chartwell the full Profit Split due and owing under the Agreement.

23. Harris failed to properly calculate, account for, and pay Chartwell the full COG due and owing under the Agreement.

24. Harris failed to properly calculate, account for, and pay Chartwell the full Reduced COG due and owing under the Amendment.

25. As a result of these failures, Chartwell has suffered damages in an amount not presently known but, in any event, not less than $3.1 million, and not including pre-judgment interest, costs, fees, and other disbursements.

26. Accordingly, Harris is liable to Chartwell for breach of the Agreement and Amendment. Chartwell reserves the right to seek additional damages for any further, presently unknown breaches of the Agreement and Amendment.

## SECOND CAUSE OF ACTION
### (BREACH OF CONTRACT; POST-TERMINATION PURCHASE ORDERS)

27. Chartwell repeats and re-alleges all allegations set forth in paragraphs 1-26 as if fully set forth herein.

28. Chartwell and Harris entered into several Post-Termination Purchase Orders beginning in or about December 2017.

29. The Post-Termination Purchase Orders are valid and binding upon Harris.

30. Chartwell fully performed its obligations under the Post-Termination Purchase Orders.

31. Harris failed to properly calculate and account for its SRAs under the Post-Termination Purchase Orders.

32. Harris failed to properly calculate, account for, and pay Chartwell the full Adjusted Profit Split due and owing under the Post-Termination Purchase Orders.

33. As a result of these failures, Chartwell has suffered damages in an amount not presently known but, in any event, not less than $1 million, or otherwise an amount to be determined at trial, and not including pre-judgment interest, costs, fees, and other disbursements.

34. Accordingly, Harris is liable to Chartwell for breach of the Post-Termination Purchase Orders. Chartwell reserves the right to seek additional damages for any further, presently unknown breaches of the Post-Termination Purchase Orders.

### THIRD CAUSE OF ACTION
### (GOODS SOLD AND DELIVERED)

35. Chartwell repeats and re-alleges all allegations set forth in paragraphs 1-34 as if fully set forth herein.

36. Harris ordered and received Products from Chartwell.

37. Harris failed to properly calculate, account for, and pay Chartwell the full COG, Reduced COG, Profit Split, and/or Adjusted Profit Split on the Products it ordered and received from Chartwell.

38. By receiving and/or selling the Products without rendering payment of amounts owing from Harris to Chartwell for the COG, Reduced COG, Profit Split, and/or Adjusted Profit Split, Harris is liable for goods sold and delivered.

39. By reason of the foregoing, Chartwell is entitled to payment from Harris in an amount not presently known but, in any event, not less than $3.1 million, and not including pre-judgment interest, costs, fees, and other disbursements.

### FOURTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)

40. Chartwell repeats and re-alleges all allegations set forth in paragraphs 1-39 as if fully set forth herein.

41. Chartwell delivered Products to Harris, at Chartwell's cost and expense.

42. Harris has failed to render payment of amounts owing from Harris to Chartwell for the COG, Reduced COG, Profit Split, and/or Adjusted Profit Split for delivery and/or sale of the Products, and Harris has thus improperly benefitted at Chartwell's cost and expense.

43. Harris has been unjustly enriched at Chartwell's expense, and it is against equity and good conscience to permit Harris to be unjustly enriched at Chartwell's expense.

44. By reason of the foregoing, Chartwell is entitled to payment from Harris in an amount not presently known but, in any event, not less than $3.1 million, and not including pre-judgment interest, costs, fees, and other disbursements.

### FIFTH CAUSE OF ACTION
### (QUANTUM MERUIT)

45. Chartwell repeats and re-alleges all allegations set forth in paragraphs 1-44 as if fully set forth herein.

46. Chartwell delivered Products to Harris, in good faith and at Chartwell's cost and expense.

47. Harris accepted the Products that Chartwell delivered.

48. Chartwell had an expectation of payment of amounts owing from Harris to Chartwell for the COG, Reduced COG, Profit Split, and/or Adjusted Profit Split relating to the Products that Chartwell delivered.

49. Harris has failed to render payment of amounts owing from Harris to Chartwell for the COG, Reduced COG, Profit Split, and/or Adjusted Profit Split relating to the Products that Chartwell delivered, and Harris has thus improperly benefitted at Chartwell's cost and expense.

50. Chartwell is entitled to recover the reasonable value of its cost and expense in delivering the Products to Harris, an amount not presently known but, in any event, not less than $3.1 million, and not including pre-judgment interest, costs, fees, and other disbursements.

51. By reason of the foregoing, Chartwell is entitled to payment from Harris in an amount not less than $3.1 million, and not including pre-judgment interest, costs, fees, and other disbursements.

**WHEREFORE**, Chartwell respectfully requests the following relief:

(a) On the first cause of action for breach of the Agreement and Amendment, a judgment against Harris in an amount not currently known, but, in any event, not less than $3.1 million, together with interest, attorneys' fees, costs, and disbursements;

(b) On the second cause of action for breach of the Post-Termination Purchase Orders, a judgment against Harris in an amount not currently known, but, in any event, not less than $1 million, or otherwise an amount to be determined at trial, together with interest, attorneys' fees, costs, and disbursements;

(c) On the third cause of action for goods sold and delivered, a judgment against Harris in an amount not currently known, but, in any event, not less than $3.1 million, together with interest, attorneys' fees, costs, and disbursements;

 (d) On the fourth cause of action for unjust enrichment, a judgment against Harris in an amount not currently known, but, in any event, not less than $3.1 million, together with interest, attorneys' fees, costs, and disbursements;

 (e) On the fifth cause of action for quantum meruit, a judgment against Harris in an amount not currently known, but, in any event, not less than $3.1 million together with interest, attorneys' fees, costs, and disbursements; and

 (f) Such other and greater relief in favor of Chartwell as the Court deems just and proper.

## JURY DEMAND

Chartwell hereby demands trial by jury on all issues so triable.

Dated: New York, New York
February 13, 2019

**HAHN & HESSEN LLP**

By: */s/ John P. Amato*
John P. Amato
Steven R. Aquino
488 Madison Avenue
New York, New York 10022
Telephone: 212-478-7200
Fax: 212-478-7400
jamato@hahnhessen.com
saquino@hahnhessen.com

*Attorneys for Plaintiff Chartwell Therapeutics Licensing LLC*